**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION**

| | | |
|---|---|---|
| LENDLEASE (US) CONSTRUCTION INC. F/K/A BOVIS LEND LEASE, INC. N/K/A LENDLEASE, | ) ) ) | Case No. |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| CNA INSURANCE GROUP, NATIONWIDE INSURANCE COMPANY, LLOYD'S OF LONDON, ATAIN INSURANCE COMPANIES F/K/A USF INSURANCE COMPANY, NATIONAL TRUST INSURANCE COMPANY, FIRST FINANCIAL INSURANCE COMPANY, PENN AMERICA INSURANCE COMPANY, ASPEN SPECIALTY INSURANCE COMPANY, UNITED NATIONAL INSURANCE COMPANY, JAMES RIVER INSURANCE COMPANY, PRINCETON EXPRESS & SURPLUS LINES INSURANCE COMPANY, STARSTONE NATIONAL INSURANCE COMPANY F/K/A TORUS SPECIALTY COMPANY, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **COMPLAINT** (Declaratory Judgment) (Breach of Contract) (Non-Jury) |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff Lendlease (US) Construction Inc. f/k/a Bovis Lend Lease, Inc. ("Lendlease"), by

and through its counsel, Rosen Hagood, LLC. hereby files this Complaint for declaratory judgment

against Defendants CNA Insurance Group ("CNA"); Nationwide Insurance Company

("Nationwide"); Lloyd's of London ("Lloyd's"); Atain Insurance Companies f/k/a USF Insurance

Company ("Atain"); National Trust Insurance Company ("National Trust"); First Financial

Insurance Company ("First Financial"); Penn America Insurance Company ("Penn America");

Aspen Specialty Insurance Company ("Aspen"); United National Insurance Company ("United

National"); James River Insurance Company ("James River"); Princeton Express & Surplus Lines Insurance Company ("Princeton"); and Starstone National Insurance Company f/k/a Torus Specialty Company  ("Starstone"), alleging upon information and belief as follows:

## **INTRODUCTION**

1.     By way of this Complaint, Lendlease seeks a declaratory judgment against Defendants CNA, Nationwide, Lloyd's, Atain, National Trust, First Financial, Penn America, Aspen, United National, James River, Princeton, and Starstone (collectively, "Defendants") that Defendants have an obligation to defend and indemnify Lendlease in connection with the underlying action, captioned *BEI-Beach, LLC v. Mashburn Christman, JV, Lendlease (US) Construction, Inc. f/k/a Bovis Lendlease, Inc., and McCrory Construction Company, LLC*, No. 2015-CP-26-07275, filed in the South Carolina Court of Common Pleas, Horry County Circuit Court (the "Underlying Action").

2.     Lendlease also asserts claims for breach of contract against each Defendant for failing to fulfill the obligations owed to Lendlease.

## **THE PARTIES**

3.     Plaintiff Lendlease is a Florida corporation with its principal place of business located in New York, New York. At all times relevant hereto, Lendlease was authorized and routinely conducted business in South Carolina.

4.     Defendant CNA is a Delaware corporation with its principal place of business located in Chicago, Illinois. CNA is qualified to do business in the State of South Carolina and upon information and belief, routinely conducts business in South Carolina in the form of providing, among other things, liability insurance coverage to the residents, citizens and business in the State of South Carolina.

2

5.     Defendant Nationwide is an Ohio corporation with its principal place of business located in Columbus, Ohio.  Nationwide is qualified to do business in the State of South Carolina and upon information and belief, routinely conducts business in South Carolina in the form of providing, among other things, liability insurance coverage to the residents, citizens and business in the State of South Carolina.

6.     Defendant Lloyd's of London is a British public liability company with its principal place of business located in London, England.  Lloyd's is qualified to do business in the State of South Carolina and upon information and belief, routinely conducts business in South Carolina in the form of providing, among other things, liability insurance coverage to the residents, citizens and business in the State of South Carolina.

7.     Defendant Atain is a Michigan corporation with its principal place of business located in Farmington Hills, Michigan. Atain is qualified to do business in the State of South Carolina and upon information and belief, routinely conducts business in South Carolina in the form of providing, among other things, liability insurance coverage to the residents, citizens and business in the State of South Carolina.

8.     Defendant National Trust is an Indiana corporation with its principal place of business in Sarasota, Florida. National Trust is qualified to do business in the State of South Carolina and upon information and belief, routinely conducts business in South Carolina in the form of providing, among other things, liability insurance coverage to the residents, citizens and business in the State of South Carolina.

9.     Defendant First Financial is an Illinois corporation with its principal place of business in Burlington, North Carolina.  First Financial is qualified to do business in the State of South Carolina and upon information and belief, routinely conducts business in South Carolina in

the form of providing, among other things, liability insurance coverage to the residents, citizens and business in the State of South Carolina.

10.     Defendant Penn America is a Pennsylvania corporation with its principal place of business in Bala Cynwyd, Pennsylvania. Penn America is qualified to do business in the State of South Carolina and upon information and belief, routinely conducts business in South Carolina in the form of providing, among other things, liability insurance coverage to the residents, citizens and business in the State of South Carolina.

11.     Defendant Aspen is a North Dakota corporation with its principal place of business in Rocky Hill, Connecticut.  Aspen is qualified to do business in the State of South Carolina and upon information and belief, routinely conducts business in South Carolina in the form of providing, among other things, liability insurance coverage to the residents, citizens and business in the State of South Carolina.  Defendant United National is a Pennsylvania corporation with its principal place of business in Bala Cynwyd, Pennsylvania. United National is qualified to do business in the State of South Carolina and upon information and belief, routinely conducts business in South Carolina in the form of providing, among other things, liability insurance coverage to the residents, citizens and business in the State of South Carolina.

12.     Defendant James River is an Ohio corporation with its principal place of business in Richmond, Virginia. James River is qualified to do business in the State of South Carolina and upon information and belief, routinely conducts business in South Carolina in the form of providing, among other things, liability insurance coverage to the residents, citizens and business in the State of South Carolina.

13.     Defendant Princeton is a Delaware corporation with its principal place of business in Princeton, New Jersey. Princeton is qualified to do business in the State of South Carolina and

4

upon information and belief, routinely conducts business in South Carolina in the form of providing, among other things, liability insurance coverage to the residents, citizens and business in the State of South Carolina.

14.     Defendant Starstone is a Delaware corporation with its principal place of business in Jersey City, New Jersey. Starstone is qualified to do business in the State of South Carolina and upon information and belief, routinely conducts business in South Carolina in the form of providing, among other things, liability insurance coverage to the residents, citizens and business in the State of South Carolina.

## JURISDICTION & VENUE

15.     This Honorable Court possesses original jurisdiction over this Complaint pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs, and the matter in controversy is between citizens of different states.

16.     This Honorable Court possesses the power to declare the respective rights and other legal relations of Lendlease and its insurers as requested herein pursuant to 28 U.S.C. § 2201(a).

17.     Venue is proper in the United States District Court for the District of South Carolina, Florence Division, pursuant to 28 U.S.C. § 121 and U.S.C. § 1391(a), because a substantial part of the events or omissions giving rise to Lendlease claims against the Defendants occurred within the District of South Carolina and the Defendants subjected themselves to the personal jurisdiction of the courts of South Carolina under section 36-2-803 of the South Carolina Code, including but not limited to:

      a.     Contracting to insure any person, property, or risk located within this State at the time of contracting;

      b.     Transacting business in South Carolina; and/or

c.     Committing a tortious act in South Carolina.

## FACTUAL BACKGROUND

A.     **THE PROJECT**

18.     This declaratory judgment action arises out the design and construction of a mixed-use development consisting of seven buildings located in Myrtle Beach, South Carolina. (the "Project" or "Market Common").

19.     On October 5, 2006, Lendlease entered into a contract with developer LUK – MB1, LLC ("Owner") to become one of three general contractors for the Project.

20.     Of the seven buildings constructed for the Project, Lendlease served as construction manager at risk for providing certain construction services as per the contract for buildings A6, A7 and A8 (collectively, the "Lendlease Buildings"), which are comprised of three floors of residential units over one floor of retail space.

21.     On January 18, 2007, Lendlease entered into a subcontract with Spann Roofing and Sheet Metal, Inc. ("Spann"), wherein Spann agreed to provide roofing work at the Project.

22.     On July 18, 2007, Lendlease entered into a subcontract with Wallcraft Construction Inc. ("Wallcraft"), wherein Wallcraft agreed to provide "Exterior Insulation and Finish System and Portland Cement Plaster" work at the Project.

23.     On January 29, 2007, Lendlease entered into a subcontract with McDowell Commercial Construction, LLC ("McDowell"), wherein McDowell agreed to install vinyl windows and doors at the Project.

24.     Finally, on January 25, 2007, Lendlease entered into a subcontract with R.J Kenney Associates, Inc. ("RJ Kenney"), wherein RJ Kenney agreed to provide building consulting services for the Project.

6

25.    With respect to insurance requirements, the Subcontracts contain, in pertinent part, the following provision:

### Exhibit C – Insurance Requirements

*        *        *

Subcontractor shall provide insurance as follows:

*        *        *

2.    Commercial General Liability ("CGL") with a combined single limit for Bodily Injury, Personal Injury and Property Damage of at least $5,000,000 per occurrence and aggregate. The general aggregate limit shall apply on a per project basis.  The limit may be provided through a combination of primary and umbrella/excess liability policies.

The terms and conditions of coverage shall be provided through the use of ISO Coverage Form CG-00-01-1001 or its equivalent and shall encompass the following:

a.    X, C and U hazards, where applicable;

b.    Independent Contractors;

c.    Blanket Written Contractual Liability covering all Indemnity Agreements, including Subcontract, Article 12 "Indemnity";

d.    Products Liability and Completed Operations, with the provision that coverage shall extend for a period of at least twelve (12) months from the Project completion or for any longer period if required elsewhere in the Contract Documents (such longer period shall take precedence);

e.    CGL coverage written on an occurrence form;

f.    Endorsement naming LUC-MB1, LLC, Bovis Lendlease, Inc. and Bovis Lendlease Inc.'s parent and affiliates (to the extent applicable) and any other entity as required in the Owner/Contractor Agreement as Additional Insureds.  ISO Form CG 2010 1185 shall be used to provide this coverage.

7

g.      Waiver of Subrogation in favor of all Additional Insureds.

h.      Policy to be primary as respects the coverage afforded the Additional Insureds.

26.     The Subcontracts also required Defendants to submit certificates of insurance to Lendlease indicating the foregoing applicable coverage prior to commencing any work at the Project.

27.     Article 12, Indemnity of the Subcontracts, also includes contractual defense and indemnity provisions in favor of Lendlease with respect to any claims "caused by, arising out of, resulting from, or occurring in connection with the performance of the Work by Subcontractor … whether or not caused in part by the active or passive negligence or other fault of a party indemnified hereunder."

**B.      THE UNDERLYING ACTION**

28.     On October 2, 2015, BEI-Beach, LLC ("BEI"), the company that purchased Market Common from LUK-MB1, LLC out of receivership, filed the Underlying Action against Lendlease and the other two general contractors for the Project.

29.     On April 7, 2017, BEI filed an Amended Complaint in the Underlying Action.

30.     According to the Amended Complaint, following its purchase of Market Common out of receivership from LUK-MBI, Inc., BEI became aware of the following defects and deficiencies at the project:

a.      Misapplied exterior stucco resulting in cracking, efflorescence, failure of water resistance, water intrusion, damage to substructures, including building envelopes, interior floor and ceiling;

8

    b.  Improper or lack of flashing resulting in water intrusion and damage to substructures, including the building envelope and interior walls;

    c.  Improper waterproofing on external walkways resulting in water intrusion and damage to substructures, including metal framing;

    d.  External guardrails assembled in violation of applicable building codes;

    e.  Building envelopes constructed without proper weeps and channels to allow for water to escape and resulting in substructure damage; and

    f.  Improper roof installation, resulting in water intrusion and damage to substructures, interior walls and ceilings.

31.    As a result of these defects, BEI alleges that it has been damaged by way of repair costs, loss of use, and such other damages as may be determined at trial.

32.    As to Lendlease, the Amended Complaint alleges that "by virtue of its construction of Buildings A-6, A-7, and A-8 at the Market Common, [Lendlease] extended to BEI a warranty of workmanlike service in regard to the construction thereof."

33.    The Amended Complaint alleges that Lendlease breached this warranty "by virtue of the defects alleged above, singly and in combination, all resulting in the necessity for repair of the defects."

34.    Additionally, the Amended Complaint alleges that Lendlease was negligent, grossly negligent, carless, reckless, willful, and wanton in regard to its construction which has caused or contributed to the following defects:

    a.  In failing to use due care in the construction of Buildings A-6, A-7, and A-8;

9

   b.  Improper installation and construction of the exterior wall and roof systems and related waterproofing;

   c.  Failure to provide sufficient barriers against the intrusion of water into the exterior wall system and an adequate avenue for exit of water that does get into the exterior wall system;

   d.  Failure to properly select building materials and materials free from defect;

   e.  Construction in violation of applicable building codes and accepted industry standards and practices;

   f.  Failure to properly select qualified subcontractors to perform construction and failing to properly manage the selected subcontractors and review the work performed;

   g.  Improper installation of exterior stucco and related cladding, resulting in water intrusion and damage to other building elements; and

   h.  Other deficiencies and failures to be proven at trial.

## C.    **SUBCONTRACTORS' INSURANCE POLICIES**

**Policies Issued to Spann**

35.    Upon information and belief, CNA issued two commercial general liability policies to Spann effective May 1, 2008 through May 1, 2009 (the "Spann CNA Policies").

36.    Upon information and belief, the Spann CNA Policies contain one or more provisions/endorsements entitling Lendlease to defense and indemnity in connection with the Underlying Action.

37.    Lendlease has tendered its defense and indemnity in connection with the Underlying Action to CNA.

38.    CNA has partially accepted the tender of defense, but has not completely complied with its obligation to defend or indemnify Lendlease in connection with the Underlying Action.

10

**Policies Issued to Wallcraft**

39.    Upon information and belief, Nationwide issued several commercial general liability and umbrella liability policies to Wallcraft effective June 23, 2007 through June 23, 2008 (the "Wallcraft Nationwide Policies").

40.    Upon information and belief, the Wallcraft Nationwide Policies contain one or more provisions/endorsements entitling Lendlease to defense and indemnity in connection with the Underlying Action.

41.    Lendlease has tendered its defense and indemnity in connection with the Underlying Action to Nationwide.

42.    Nationwide has disclaimed any obligation to defend or indemnify Lendlease in connection with the Underlying Action.

43.    Upon information and belief, Lloyd's issued a commercial general liability policy to Wallcraft effective July 8, 2008 through July 8, 2009 (the "Lloyd's Policy").

44.    Upon information and belief, the Lloyd's Policy contains one or more provisions/endorsements entitling Lendlease to defense and indemnity in connection with the Underlying Action.

45.    Lendlease has tendered its defense and indemnity in connection with the Underlying Action to Lloyd's.

46.    Lloyd's has disclaimed any obligation to defend or indemnify Lendlease in connection with the Underlying Action.

**Policies Issued to McDowell**

47.     Upon information and belief, Atain issued a commercial general liability policy to McDowell effective December 26, 2007 through December 26, 2008 (the "McDowell Atain Policy").

48.     Upon information and belief, the McDowell Atain Policy contains one or more provisions/endorsements entitling Lendlease to defense and indemnity in connection with the Underlying Action.

49.     Lendlease has tendered its defense and indemnity in connection with the Underlying Action to Atain.

50.     Atain has disclaimed any obligation to defend or indemnify Lendlease in connection with the Underlying Action.

51.     Upon information and belief, First Financial issued an umbrella liability policy to McDowell effective January 1, 2008 through January 1, 2009 (the "McDowell First Financial Policy").

52.     Upon information and belief, the McDowell First Financial Policy contains one or more provisions/endorsements entitling Lendlease to defense and indemnity in connection with the Underlying Action.

53.     Lendlease has tendered its defense and indemnity in connection with the Underlying Action to First Financial.

54.     First Financial has disclaimed any obligation to defend or indemnify Lendlease in connection with the Underlying Action.

**Policies Issued to RJ Kenney**

### a. Penn America

55.    Upon information and belief, Penn America issued a commercial general liability policy to RJ Kenney effective September 21, 2006 through September 21, 2007 (the "RJ Kenney Penn America Policy").

56.    Upon information and belief, the RJ Kenney Penn America Policy contains one or more provisions/endorsements entitling Lendlease to defense and indemnity in connection with the Underlying Action.

57.    Lendlease has tendered its defense and indemnity in connection with the Underlying Action to Penn America.

58.    Penn America has disclaimed any obligation to defend or indemnify Lendlease in connection with the Underlying Action.

### b. Aspen

59.    Upon information and belief, Aspen issued several commercial general liability policies to RJ Kenney effective October 2, 2007 thorough October 2, 2012 (the "RJ Kenney Aspen Policies").

60.    Upon information and belief, the RJ Kenney Aspen Policies contain one or more provisions/endorsements entitling Lendlease to defense and indemnity in connection with the Underlying Action.

61.     Lendlease has tendered its defense and indemnity in connection with the Underlying Action to Aspen.

62.     Aspen has disclaimed any obligation to defend or indemnify Lendlease in connection with the Underlying Action.

### c. Atain

63.     Upon information and belief, Atain issued several commercial general liability policies to RJ Kenney effective October 2, 2012 thorough October 2, 2017 (the "RJ Kenney Atain Policies").

64.     Upon information and belief, the RJ Kenney Atain Policies contain one or more provisions/endorsements entitling Lendlease to defense and indemnity in connection with the Underlying Action.

65.     Lendlease has tendered its defense and indemnity in connection with the Underlying Action to Atain.

66.     Atain has disclaimed any obligation to defend or indemnify Lendlease in connection with the Underlying Action.

### d. United National

67.     Upon information and belief, United National issued several umbrella liability policies to RJ Kenney effective December 28, 2007 through December 28, 2010 (the "RJ Kenney United National Policies").

68.     Upon information and belief, the RJ Kenney United National Policies contain one or more provisions/endorsements entitling Lendlease to defense and indemnity in connection with the Underlying Action.

14

69.     Lendlease has tendered its defense and indemnity in connection with the Underlying Action to United National.

70.     United National has disclaimed any obligation to defend or indemnify Lendlease in connection with the Underlying Action.

### e. James River

71.     Upon information and belief, James River issued several umbrella liability policies to RJ Kenney effective December 28, 2010 through December 28, 2012 (the "RJ Kenney James River Policies").

72.     Upon information and belief, the RJ Kenney James River Policies contain one or more provisions/endorsements entitling Lendlease to defense and indemnity in connection with the Underlying Action.

73.     Lendlease has tendered its defense and indemnity in connection with the Underlying Action to James River.

74.     James River has disclaimed any obligation to defend or indemnify Lendlease in connection with the Underlying Action.

### f. Princeton

75.     Upon information and belief, Princeton issued several umbrella liability policies to RJ Kenney effective July 5, 2013 through July 5, 2015 (the "RJ Kenney Princeton Policies").

76.     Upon information and belief, the RJ Kenney Princeton Policies contain one or more provisions/endorsements entitling Lendlease to defense and indemnity in connection with the Underlying Action.

77.     Lendlease has tendered its defense and indemnity in connection with the Underlying Action to Princeton.

15

78.     Princeton has disclaimed any obligation to defend or indemnify Lendlease in connection with the Underlying Action.

### g. Starstone

79.     Upon information and belief, Starstone issued several commercial general liability policies to RJ Kenney effective August 3, 2015 through August 3, 2017 (the "RJ Kenney Starstone Policies").

80.     Upon information and belief, the RJ Kenney Starstone Policies contain one or more provisions/endorsements entitling Lendlease to defense and indemnity in connection with the Underlying Action.

81.     Lendlease has tendered its defense and indemnity in connection with the Underlying Action to Starstone.

82.     Starstone has disclaimed any obligation to defend or indemnify Lendlease in connection with the Underlying Action.

### COUNT ONE
### Declaratory Judgment as against CNA (Spann)

83.     Lendlease hereby incorporates and re-alleges paragraphs 1-82 of its complaint as if set fully herein.

84.     The alleged damages in the Underlying Action fall within the insuring agreement of the CNA Policies and are not barred by any exclusion(s) in the CNA Policies.

85.     Lendlease qualifies as an additional insured under the CNA Policies issued to Spann.

86.     Lendlease is entitled to additional insured coverage under the CNA Policies in connection with the Underlying Action.

16

87.     CNA has a duty to defend Lendlease with respect to the Underlying Action under CNA Policies issued to Spann.

88.     CNA has a duty to indemnify Lendlease with respect to the Underlying Action under the CNA Policies issued to Spann.

89.     In addition, CNA has an obligation to indemnify Lendlease in connection with Spann's contractual defense and indemnity obligation as to Lendlease in the Subcontract.

## COUNT TWO
### Breach of Contract against CNA (Spann)

90.     Lendlease hereby incorporates and re-alleges paragraphs 1-89 of its complaint as if set fully herein.

91.     Lendlease qualifies as an additional insured under the CNA Policies issued to Spann.

92.     Lendlease is entitled to additional insured coverage under the CNA Policies issued to Spann in connection with the Underlying Action.

93.     CNA has an obligation to defend and indemnify Lendlease in connection with the Underlying Action under the terms and conditions of the CNA Policies issued to Spann.

94.     Lendlease and/or Spann has tendered Lendlease's defense and indemnity in connection with the Underlying Action to CNA.

95.     In breach of its obligations under the CNA Policies, CNA has refused to defend and/or indemnify Lendlease in connection with the Underlying Action (or otherwise failed to respond to Lendlease's tender).

96.     Lendlease has suffered damages as a consequence of CNA's breach.

## COUNT THREE
### Declaratory Judgment as against Nationwide and Lloyds (Wallcraft)

97.    Lendlease hereby incorporates and re-alleges paragraphs 1-96 of its complaint as if set fully herein.

98.    The alleged damages in the Underlying Action fall within the insuring agreement of the Nationwide and Lloyds' Policies and are not barred by any exclusion(s) in the Policies.

99.    Lendlease qualifies as an additional insured under the Nationwide and Lloyd's Policies issued to Wallcraft.

100.    Lendlease is entitled to additional insured coverage under the Nationwide and Lloyds' Policies in connection with the Underlying Action.

101.    Nationwide and Lloyds have a duty to defend Lendlease with respect to the Underlying Action under the Nationwide and Lloyds' Policies issued to Wallcraft.

102.    Nationwide and Lloyds have a duty to indemnify Lendlease with respect to the Underlying Action under the Nationwide and Lloyds' Policies issued to Wallcraft.

103.    In addition, Nationwide and Lloyds' have an obligation to indemnify Wallcraft in connection with Wallcraft's contractual defense and indemnity obligation as to Lendlease in the Subcontract.

## COUNT FOUR
### Breach of Contract against Nationwide and Lloyds (Wallcraft)

104.    Lendlease hereby incorporates and re-alleges paragraphs 1-103 of its complaint as if set fully herein.

105.    Lendlease qualifies as an additional insured under the Nationwide and Lloyds' Policies issued to Wallcraft.

106.    Lendlease is entitled to additional insured coverage under the Nationwide and Lloyds' Policies issued to Wallcraft in connection with the Underlying Action.

107.    Nationwide and Lloyds have an obligation to defend and indemnify Lendlease in connection with the Underlying Action under the terms and conditions of the Nationwide and Lloyds' Policies issued to Wallcraft.

108.    Lendlease and/or Wallcraft has tendered Lendlease's defense and indemnity in connection with the Underlying Action to Nationwide and Lloyds.

109.    In breach of their obligations under the Nationwide and Lloyds' Policies issued to Wallcraft, Nationwide and Lloyds have refused to defend and/or indemnify Lendlease in connection with the Underlying Action (or otherwise failed to respond to Lendlease's tender).

110.    Lendlease has suffered damages as a consequence of Nationwide's and Lloyds' breach.

## COUNT FIVE
### Declaratory Judgment as against Atain and First Financial (McDowell)

111.    Lendlease hereby incorporates and re-alleges paragraphs 1-109 of its complaint as if set fully herein.

112.    The alleged damages in the Underlying Action fall within the insuring agreement of the Atain and First Financial Policies and are not barred by any exclusion(s) in the Policy.

113.    Lendlease qualifies as an additional insured under the Atain and First Financial Policies issued to McDowell.

114.    Lendlease is entitled to additional insured coverage under the Atain and First Financial Policies in connection with the Underlying Action.

115.    Atain and First Financial have a duty to defend Lendlease with respect to the Underlying Action under the Atain and First Financial Policies.

116.    Atain and First Financial have a duty to indemnify Lendlease with respect to the Underlying Action under the Atain and First Financial Policies.

117.    In addition, Atain and First Financial have an obligation to indemnify McDowell in connection with McDowell's contractual defense and indemnity obligation as to Lendlease in the Subcontract.

## COUNT SIX
### Breach of Contract against Atain and First Financial (McDowell)

118.    Lendlease hereby incorporates and re-alleges paragraphs 1-117 of its complaint as if set fully herein.

119.    Lendlease qualifies as an additional insured under the Atain and First Financial Policies.

120.    Lendlease is entitled to additional insured coverage under the Atain and First Financial Policies in connection with the Underlying Action.

121.    Atain and First Financial have an obligation to defend and indemnify Lendlease in connection with the Underlying Action under the terms and conditions of the Atain and First Financial Policies issued to McDowell.

122.    Lendlease and/or McDowell has tendered Lendlease's defense and indemnity in connection with the Underlying Action to Atain and First Financial.

123.    In breach of their obligations under the Atain and First Financial Policies, Atain and First Financial have refused to defend and/or indemnify Lendlease in connection with the Underlying Action (or otherwise failed to respond to Lendlease's tender).

20

124.    Lendlease has suffered damages as a consequence of Atain's and First Financial's breach.

## COUNT SEVEN
### Declaratory Judgment as against Penn America, Aspen, Atain, United National, James River, Princeton, and Starstone (RJ Kenney)

125.    Lendlease hereby incorporates and re-alleges paragraphs 1-124 of its complaint as if set fully herein.

126.    The alleged damages in the Underlying Action fall within the insuring agreement of the Penn America, Aspen, Atain, United National, James River, Princeton, and Starstone Policies (collectively, the "RJ Kenney Insurers" and the "RJ Kenney Policies") and are not barred by any exclusion(s) in the RJ Kenney Policies.

127.    Lendlease qualifies as an additional insured under the RJ Kenney Policies.

128.    Lendlease is entitled to additional insured coverage under the RJ Kenney Policies in connection with the Underlying Action.

129.    The RJ Kenney Insurers have a duty to defend Lendlease with respect to the Underlying Action under the RJ Kenney Policies.

130.    RJ Kenney Insurers have a duty to indemnify Lendlease with respect to the Underlying Action under the RJ Kenney Policies.

131.    In addition, the RJ Kenney Insurers have an obligation to indemnify RJ Kenney in connection with RJ Kenney's contractual defense and indemnity obligation as to Lendlease in the Subcontract.

## COUNT EIGHT
### Breach of Contract against Penn America, Aspen, Atain, United National, James River, Princeton, and Starstone (RJ Kenney)

132.     Lendlease hereby incorporates and re-alleges paragraphs 1-31 of its complaint as if set fully herein.

133.     Lendlease qualifies as an additional insured under the RJ Kenney Policies.

134.     Lendlease is entitled to additional insured coverage under the RJ Kenney Policies in connection with the Underlying Action.

135.     The RJ Kenney Insurers have an obligation to defend and indemnify Lendlease in connection with the Underlying Action under the terms and conditions of the RJ Kenney Policies.

136.     Lendlease and/or RJ Kenney has tendered Lendlease's defense and indemnity in connection with the Underlying Action to the RJ Kenney Insurers.

137.     In breach of their obligations under the RJ Kenney Policies, the RJ Kenney insurers have refused to defend and/or indemnify Lendlease in connection with the Underlying Action (or otherwise failed to respond to Lendlease's tender).

138.     Lendlease has suffered damages as a consequence of the RJ Kenney Insurers' breach.

**WHEREFORE,** Lendlease prays that the Court enter judgment in its favor on all causes of action against the Defendants and award Lendlease damages in the amounts to be proven at trial, including but not limited to the following:

A.     Enter judgment against CNA, Nationwide, Lloyds, First Financial, Penn America, Aspen, Atain, United National, James River, Princeton, and Starstone and in favor of Lendlease for all damages suffered as a consequence of the Defendants' breach

of their obligation to defend and indemnify Lendlease in connection with the Underlying Action under the insurance policies issued by the named Defendants;

B.      For those costs incurred pursuant to law; and

C.      For such other relief as is just and equitable herein.

Respectfully submitted,

ROSEN HAGOOD, LLC.

s/James A. Bruorton IV
James A. Bruorton IV, Esq. (Fed. No. 9302)
151 Meeting Street, Suite 400
P.O. Box 893
Charleston, S.C. 29402
(843) 577-6726
cbruorton@rosenhagood.com

Charleston, South Carolina
April 1, 2019