IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| LENDLEASE (US) CONSTRUCTION INC. F/K/A BOVIS LAND LEASE, INC. N/K/A LENDLEASE,<br><br>Plaintiff,<br><br>vs.<br><br>NATIONWIDE INSURANCE COMPANY, NATIONAL FIRE INSURANCE COMPANY OF HARTFORD; CERTAIN UNDERWRITERS FOR LLOYDS OF LONDON; EVANSTON INSURANCE COMPANY,<br><br>Defendants. | Civil Action No.: 4:19-cv-00959-JD<br><br>**ORDER** |

In this declaratory judgment and breach of contract action Defendant Nationwide Mutual Fire Insurance Company (identified in the caption as "Nationwide Insurance Company") ("Nationwide") has filed a Motion for Summary Judgment (DE 103) seeking to be dismissed from this case. Nationwide asserts that Plaintiff Lendlease (US) Construction Inc., F/K/A Bovis Land Lease, Inc. N/K/A Lendlease[1] ("Lendlease") has no coverage under Nationwide's commercial general liability policy and umbrella policy. The parties have briefed the motion; and therefore, the motion is ripe for review and decision. After reviewing the motion and memoranda submitted, the Court grants Nationwide's Motion for Summary Judgement for the reasons provided herein.

## BACKGROUND

---

[1] Lendlease represents that it is the successor organization to Bovis Land Lease, Inc., which was the company under contract for the Project. Since Bovis Land Lease Inc., no longer exists, the Court will refer to Lendlease instead of Bovis Land Lease Inc.

1

This case arises out of an underlying action identified as <u>BEI-Beach, LLC v. Mashburn Christman, JV, Lendlease (US) Construction, Inc. f/k/a Bovis Lendlease, Inc., and McCrory Construction Company, LLC</u>, No. 2015-CP-26-07275 (Ct. Comm. Pl., Horry County) (hereinafter "the Underlying Lawsuit"). (DE. 103-1, p. 2.) In the Underlying Lawsuit, the property owner brought claims against three general contractors with respect to the design and construction of a mixed-use development consisting of seven buildings in Myrtle Beach, South Carolina (the "Project" or "Market Common"). Lendlease served as construction manager for buildings A6, A7, and A8 (the "Lendlease Buildings"). On July 18, 2007, Lendlease entered into a subcontract with Wallcraft Construction, Inc, ("Wallcraft"), a subcontractor on the Project for Exterior Insulation and Finish System ("EIFS") and Portland cement plaster ("stucco") work at the Lendlease Buildings (the "Subcontract"). (Id.)

Pursuant to the terms of the Subcontract, Wallcraft agreed to obtain a commercial general liability policy and name Lendlease as an additional insured. (DE 103-1, p. 4.) Wallcraft already had a Commercial General Liability Policy No. 77 AC727681-3001 issued by Nationwide for the period of June 23, 2007, through June 23, 2008 (the "Policy"). (Id.) Lendlease was listed as an additional insured which contained a "Who Is An Insured" section:

> A. WHO IS AN INSURED (Section C) is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal injury" or "advertising injury" caused, in whole or in part, by:
>
> 1. Your acts or omissions; or
> 2. The acts or omissions of those acting on your behalf;
>
>    in the performance of your ongoing operations for the additional insured(s).
>
> B. With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

> This insurance does not apply to "bodily injury" or "property damage" occurring after:
>
> 1. All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or
>
> 2. That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

(DE 103-5, p. 18.) The Policy also contains a Manifestation Endorsement that further limits the availability of coverage. The Policy provides in pertinent part:

> A. Paragraph 1. b. under A. COVERAGES, BUSINESS LIABILITY is replaced by the following:
>
>   b. This insurance applies to "bodily injury" and "property damage" only if:
>
>   (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
>
>   (2) The "bodily injury" or "property damage" first "manifests" during the policy period.
>
> . . .
>
> B. The following definition is added to LIABILITY AND MEDICAL EXPENSES DEFINITIONS:
>
>   "Manifests" means that the damage or injury is either:
>
>   a. Discovered by the insured or some other person; or
>
>   b. Reasonably should be discovered by the insured or some other person.
>
> C. The following exclusion is added to B. EXCLUSIONS 1., APPLICABLE TO BUSINESS LIABILITY COVERAGE:
>
>   This insurance does not apply to:
>
>   "Bodily injury" and "property damage" which "manifests" prior to the inception of this policy or after termination of this policy.

3

(DE 103-5, p. 57.) The Policy also contained an umbrella provision which extended coverage to entities that qualify as additional insureds pursuant to underlying insurance policy. However, such coverage was limited by the following provision:

> V. PERSONS INSURED
>
> Each of the following is an insured under this policy to the extent set forth below:
> . . . .
>
> F.  Anyone else who is an insured under any policy of underlying insurance but only to the extent insurance is provided by that policy and subject to all its limitations, other than the limits of insurance.

(DE 103-6, pp. 10, 11.) The umbrella policy defines "insured" and "underlying insurance" as follows:

> H.  Insured means any person or organization qualifying as an insured in Item V. Except with respect to our limits of insurance and the retained limit, the insurance afforded applies separately to each insured who is seeking coverage or against whom claim is made or suit is brought.
> . . . .
>
> P.  Underlying insurance means policies listed in the Schedule of Underlying Policies and other policies available to the insured applicable to the occurrence.

(Id. at 13, 14.)

Lendlease was the general contractor for buildings A6, A7, and A8, and achieved substantial completion in March 2008. (DE 39, p. 4, ¶¶ 8-9.) The property owner alleged that defective construction of various exterior building components caused water intrusion and associated damage. (Id. at pp. 4-5.) The property owner sued Lendlease for negligence and breach of warranty for construction defects in the buildings built by Lendlease. (Id. at pp. 7-9.) The property owner alleges that it became aware of construction defects following its purchase of the Project on January 7, 2011. (DE 103-4, pp. 5-6, ¶¶ 11, 13.) Lendlease made claims against Nationwide's named insured, Wallcraft, via a third-party complaint filed on April 24, 2017, for

4

contribution, breach of warranty, breach of contract, contractual/equitable indemnity, and negligence/gross negligence/recklessness.

## LEGAL STANDARD

The party seeking summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "A fact is 'material' if proof of its existence or non-existence would affect disposition of the case under applicable law. An issue of material fact is 'genuine' if the evidence offered is such that a reasonable jury might return a verdict for the non-movant." Wai Man Tom v. Hosp. Ventures LLC, 980 F.3d 1027, 1037 (4th Cir. 2020) (citation omitted). Once the movant has made this threshold demonstration, the nonmoving party, to survive the motion for summary judgment, must demonstrate specific, material facts that give rise to a genuine issue. Celotex Corp., 477 U.S. at 323. Under this standard, 'the mere existence of a scintilla of evidence' in favor of the non-movant's position is insufficient to withstand the summary judgment motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). "Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion." Wai Man Tom, 980 F.3d at 1037.

"Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 568 (4th Cir. 2015) (quoting 10A Charles A. Wright et al., Federal Practice & Procedure § 2728 (3d ed. 1998)). "The court may grant summary judgment only if it concludes that the evidence could not permit a reasonable jury to return a favorable verdict. "Therefore, courts must view the evidence in the light most favorable to the nonmoving party and refrain from weighing the evidence or making credibility determinations." Variety Stores, Inc. v. Wal-Mart Stores, Inc.,

888 F.3d 651, 659 (4th Cir. 2018) (internal quotation marks omitted and alterations adopted).  A court improperly weighs the evidence if it fails to credit evidence that contradicts its factual conclusions or fails to draw reasonable inferences in the light most favorable to the nonmoving party.  Id. at 659-60.

**DISCUSSION**

Nationwide contends summary judgment is appropriate in this case because the Policy does not provide coverage to Lendlease.  Nationwide identifies three reasons for this contention:  1) there is no additional insured coverage because the Policy only covers "property damage" that occurred during the Policy period, 2) the Policy's Manifestation Endorsement provision requires that damage be discovered during the policy period, which ended on June 23, 2008, and 3) the Policy's umbrella provision has not been triggered.  (DE 103-1, pp. 4, 8, and 9.)  This Court agrees.  First, as to Lendlease's claim it is an additional insured under the Policy, the Policy provides the following exclusion:

> This insurance does not apply to "bodily injury" or "property damage" occurring after:
>
> 1. All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or
>
> . . .

(DE 103-5, p. 18.)  While Lendlease correctly states that it produced Certificates of Liability Insurance issued to Wallcraft on which Lendlease is listed as the Certificate Holder (DE 111-3, p. 2), which made it an additional insured during the Policy period, that fact alone does not extend coverage to Lendlease for occurrences after the work was completed.  "An insurance policy is a contract between the insured and the insurance company, and the terms of the policy are to be construed according to contract law." Auto Owners Ins. Co. v. Rollison, 378 S.C. 600, 663 S.E.2d

6

484, 487 (2008).  South Carolina law holds that "insurance policies are subject to the general rules of contract construction." Sunex Int'l, Inc. v. Travelers Indem. Co. of Ill., 185 F. Supp. 2d 614, 617 (D.S.C. 2001).  Courts "must give policy language its plain, ordinary, and popular meaning." Id.  "An insurer's obligation under a policy of insurance is defined by the terms of the policy and cannot be enlarged by judicial construction." Id.  An insurer has no duty to defend or indemnify a party, which is unambiguously not insured under its policy.  See, Shelby Mut. Ins. Co. v. Askins, 413 S.E.2d 855, 859 (S.C. Ct. App. 1992) ("Fundamental to the concept of duty to defend is the requirement that the party seeking the defense must be an insured under a contract of insurance.") Here, the property owner in the Underlying Action alleges that defective construction of various exterior building components caused water intrusion and associated damage.  (DE 103-4, p. 6.) The property owner further alleges that it became aware of construction defects following its purchase of the Project on January 7, 2011.  (DE 103-4, pp. 5-6, ¶¶ 11, 13.)  The Complaint in the Underlying Action alleges discovery of the alleged damage years after Nationwide's policy ended. Consequently, any additional insured coverage available to Lendlease is limited under the additional insured endorsement to covered "property damage" that is caused by Wallcraft's work. Moreover, any "property damage" had to occur during the policy period in the performance of Wallcraft's operations for Lendlease.  Since there is no evidence of covered "property damage" occurring during the policy period, or by June 23, 2008, including when the property owner first discovered the damage in 2011, there is no additional insured coverage available.

Secondly, as to the Manifestation Endorsement, the Policy requires that damage be discovered during the policy period, which ended on June 23, 2008.  There is no evidence that any "property damage" was discovered between the time Wallcraft began work on the Project and when Nationwide's Policy issued to Wallcraft ended on June 23, 2008.  Thereafter, the property

owner alleges that it became aware of construction defects following its purchase of the Project on January 7, 2011. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. When the party moving for summary judgment does not bear the ultimate burden of persuasion at trial, it may discharge its burden by demonstrating to the court that there is an absence of evidence to support the non-moving party's case. See Celotex Corp., 477 U.S. at 325. The non-movant must then "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322. Lendlease has not offered in any evidence to refute Nationwide's contention. Rather, Lendlease offers speculation and ongoing discovery to refute Nationwide's position, which is insufficient to defeat summary judgment.[2] Thus, the Court finds that the Manifestation Endorsement provision bars coverage.[3]

## CONCLUSION

For the reasons set forth above, it is ORDERED, ADJUDGED and DECREED that the Defendant Nationwide's Motion for Summary Judgment (DE 103) is granted, and Nationwide is dismissed from this action.

**IT IS SO ORDERED.**

June 23, 2022
Greenville, South Carolina

Joseph Dawson, III
United States District Judge

---

[2] Lendlease's arguments regarding ongoing discovery and ripeness are unavailing. According to the Scheduling Order (DE 101), the discovery and dispositive motions deadlines were November 27, and December 28, 2020, respectively; therefore, this argument lacks merit.

[3] Given the Court's ruling that there is no additional insured coverage, and the manifestation endorsement bars coverage, Nationwide's umbrella policy provision is not triggered here. Therefore, Nationwide is equally entitled to summary judgment here because there is no coverage available under the umbrella Policy.