IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| LENDLEASE (US) CONSTRUCTION INC. F/K/A BOVIS LAND LEASE, INC. N/K/A LENDLEASE,<br><br>Plaintiff,<br><br>vs.<br><br>NATIONAL FIRE INSURANCE COMPANY OF HARTFORD; CERTAIN UNDERWRITERS FOR LLOYDS OF LONDON; EVANSTON INSURANCE COMPANY,<br>Defendants. | Civil Action No.: 4:19-cv-00959-JD<br><br><br>**ORDER** |

In this declaratory judgment and breach of contract action Defendant Atain Insurance Companies F/K/A USF Insurance Company ("USF") has filed a Motion for Summary Judgment (DE 106) seeking to be dismissed from this case. USF asserts that Plaintiff Lendlease (US) Construction Inc., F/K/A Bovis Lend Lease, Inc. N/K/A Lendlease[1] ("Lendlease") does not qualify as an additional insured under USF's commercial general liability insurance policy issued to McDowell Commercial Construction, LLC ("McDowell"), a subcontractor to Lendlease. USF contends that Lendlease is no longer an additional insured because McDowell's work under the Contract was completed, and the Policy specifically provides that there is no additional insured coverage for "property damage" that occurs after McDowell's work was completed, or after the project was put to its intended use. (DE 106, p. 2.) The parties have briefed the motion; therefore,

---

[1] Lendlease represents that it is the successor organization to Bovis Lend Lease, Inc., which was the company under contract for the Project. Since Bovis Lend Lease Inc., no longer exists, the Court will refer to Lendlease instead of Bovis Lend Lease Inc.

1

the motion is ripe for review and decision. After reviewing the motion and memoranda submitted, the Court grants USF's Motion for Summary Judgement for the reasons provided herein.

## BACKGROUND

This case arises out of an underlying action identified as <u>BEI-Beach, LLC v. Mashburn Christman, JV, Lendlease (US) Construction, Inc. f/k/a Bovis Lendlease, Inc., and McCrory Construction Company, LLC</u>, No. 2015-CP-26-07275 (Ct. Comm. Pl., Horry County) (hereinafter "the Underlying Lawsuit"). (DE. 107-2.) In the Underlying Lawsuit, the property owner brought claims against three general contractors with respect to the design and construction of a mixed-use development consisting of seven buildings in Myrtle Beach, South Carolina (the "Project" or "Market Common"). Lendlease served as construction manager for buildings A6, A7, and A8 (the "Lendlease Buildings"). On July 18, 2007, Lendlease entered into a subcontract with McDowell, a subcontractor on the Project hired to install vinyl windows and doors for the Lendlease Buildings (the "Subcontract"). (DE 107-3.)

Pursuant to the terms of the Subcontract, McDowell agreed to obtain a commercial general liability policy and name Lendlease as an additional insured ("Policy"). (DE 107-2, p. 4.) The USF Policy included a "Products-completed operations hazard," which provided:

"Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product' or "your work" except:

(1) Products that are still in your physical pos-session; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

> (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.
>
> (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.
>
> Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.
> …

(DE 107-1, p. 40.) Further, the Policy included an "Additional Insured – Owners, Lessees or Contractors – Automatic Status When Required in Construction Agreement With You" Endorsement, which provides:

> **A. Section II - Who Is An Insured** is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:
>
> **1.** Your acts or omissions; or
>
> **2.** The acts or omissions of those acting on your behalf;
>
> in the performance of your ongoing operations for the additional insured.
>
> A person's or organization's status as an additional insured under this endorsement ends when your operations for that additional insured are completed.
>
> **B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:
>
> This insurance does not apply to:
>  . . .
>
> 2. "Bodily injury" or "property damage" occurring after:
>
> > a. All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional

        insured(s) at the location of the covered operations has been completed; or

    b.    That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcon-tractor engaged in performing operations for a principal as a part of the same project.

(DE 107-1, p. 45.) The Policy also contains a Continuous and Progressive Injury Limitation ("CPIL"), which further limits the availability of coverage. This provision provides in pertinent part:

**CONTINUOUS AND PROGRESSIVE INJURY LIMITATION**

This endorsement modifies insurance provided under the following:

    All Liability coverages in All Coverage Forms

A.    This insurance does not apply to the following, which is added to the EXCLUSIONS:

All bodily injury," "property damage," personal injury" or "advertising injury" that first becomes actually or constructively known to any person prior to the effective date or after the expiration of this policy regardless of whether there is repeated or continued exposure during the period of the policy or whether the injury or damage continues, progresses or deteriorates during the term of the policy.

B.    If this policy extends for more than one annual period, then the following applies:

    1.    The most we will pay for "bodily injury," "property damage," "personal injury," and "advertising injury" that is continuous or progressively deteriorating, and that is first apparent during one of the periods of this policy, is the applicable limit of insurance available with respect to that one period.

    2.    The limit specified in paragraph B.1. above is the only limit that applies to all related "bodily injury," "property damage," "personal injury" or advertising injury", regardless of whether such injury or damage existed before, or continues or progressively deteriorates after, the period in which it is first apparent.

4

  C. Within the meaning of this endorsement, injury or damage is apparent when appreciable harm occurs that is or should be known to the insured, the person, or organization harmed.

(DE 107-1, p. 51.)

Lendlease achieved substantial completion for buildings A6, A7, and A8 in March 2008. (DE 39, p. 4, ¶¶ 8-9.) Thereafter, the property owner sued Lendlease for negligence and breach of warranty for construction defects in the buildings built by Lendlease. (Id. at pp. 7-9.) The property owner alleged that defective construction of various exterior building components caused water intrusion and associated damage. (Id. at pp. 4-5.) The property owner alleges that it became aware of construction defects following its purchase of the Project on January 7, 2011. (DE 107-2, ¶¶ 11, 13.) Lendlease made claims against USF's named insured, McDowell, via a third-party complaint filed on April 24, 2017, for contribution, breach of warranty, breach of contract, contractual/equitable indemnity, and negligence/gross negligence/recklessness. Thereafter, Lendlease tendered its defense and indemnity to USF on January 10, 2019. (DE 110, p. 4.) USF opposes any obligation to defend or indemnify Lendlease in connection with the Underlying Lawsuit and seeks dismissal from this case.

## LEGAL STANDARD

The party seeking summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "A fact is 'material' if proof of its existence or non-existence would affect disposition of the case under applicable law. An issue of material fact is 'genuine' if the evidence offered is such that a reasonable jury might return a verdict for the non-movant." Wai Man Tom v. Hosp. Ventures LLC, 980 F.3d 1027, 1037 (4th Cir. 2020) (citation omitted). Once the movant has made this threshold demonstration, the nonmoving party, to survive the motion for summary judgment, must

demonstrate specific, material facts that give rise to a genuine issue. Celotex Corp., 477 U.S. at 323. Under this standard, 'the mere existence of a scintilla of evidence' in favor of the non-movant's position is insufficient to withstand the summary judgment motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). "Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion." Wai Man Tom, 980 F.3d at 1037.

"Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 568 (4th Cir. 2015) (quoting 10A Charles A. Wright et al., Federal Practice & Procedure § 2728 (3d ed. 1998)). "The court may grant summary judgment only if it concludes that the evidence could not permit a reasonable jury to return a favorable verdict. "Therefore, courts must view the evidence in the light most favorable to the nonmoving party and refrain from weighing the evidence or making credibility determinations." Variety Stores, Inc. v. Wal-Mart Stores, Inc., 888 F.3d 651, 659 (4th Cir. 2018) (internal quotation marks omitted and alterations adopted). A court improperly weighs the evidence if it fails to credit evidence that contradicts its factual conclusions or fails to draw reasonable inferences in the light most favorable to the nonmoving party. Id. at 659-60.

## DISCUSSION

USF contends summary judgment is appropriate in this case because the Policy does not provide coverage to Lendlease. USF identifies two reasons for this contention: 1) Lendlease does not qualify as an Additional Insured because McDowell's work under the Subcontract was completed prior to the inception of the USF Policy such that Lendlease could not have been an

Additional Insured under the Policy, and 2) the "property damage" for which coverage is sought did not first manifest during the policy period as required by the CPIL Endorsement of the Policy. (DE 106, pp. 19, 22.) This Court agrees. First, as to Lendlease's claim it is an additional insured under the Policy, the Policy provides the following exclusion:

> **A. Section II - Who Is An Insured** is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:
>
> **1.** Your acts or omissions; or
>
> **2.** The acts or omissions of those acting on your behalf;
>
> in the performance of your ongoing operations for the additional insured.
>
> A person's or organization's status as an additional insured under this endorsement ends when your operations for that additional insured are completed.

(DE 107-1, p. 45.) There is no evidence in the record that McDowell's operations for Lendlease extended beyond March 2008.[2] "An insurance policy is a contract between the insured and the insurance company, and the terms of the policy are to be construed according to contract law." Auto Owners Ins. Co. v. Rollison, 378 S.C. 600, 663, S.E.2d 484, 487 (2008). South Carolina law holds that "insurance policies are subject to the general rules of contract construction." Sunex Int'l, Inc. v. Travelers Indem. Co. of Ill., 185 F. Supp. 2d 614, 617 (D.S.C. 2001). Courts "must

---

[2]   Notwithstanding Lendlease's argument that a Change Order executed by McDowell and Lendlease dated March 27, 2008 specifically references flashing work to be performed by McDowell on all three Lendlease buildings at the Project and payment applications provided by McDowell to Lendlease specifically reference periods within the Policy period (DE 110, p. 9), this work is not considered "ongoing operations" but rather work in need of service, maintenance, correction, repair or replacement is considered completed work and not part of the named insured's ongoing operations" (DE 107-1, p. 40).

7

give policy language its plain, ordinary, and popular meaning." Id. "An insurer's obligation under a policy of insurance is defined by the terms of the policy and cannot be enlarged by judicial construction." Id. An insurer has no duty to defend or indemnify a party, which is unambiguously not insured under its policy. See Shelby Mut. Ins. Co. v. Askins, 413 S.E.2d 855, 859 (S.C. Ct. App. 1992) ("Fundamental to the concept of duty to defend is the requirement that the party seeking the defense must be an insured under a contract of insurance.").

Here, the property owner in the Underlying Action alleges that defective construction of various exterior building components caused water intrusion and associated damage. (DE 107-2.) The property owner further alleges that it became aware of construction defects following its purchase of the Project on January 7, 2011. (DE 107-2, ¶¶ 11, 13.) The Complaint in the Underlying Action alleges discovery of the alleged damage years after the inception of USF's Policy and the termination thereof. Consequently, any additional insured coverage available to Lendlease is limited under the additional insured endorsement to covered "property damage" that is caused by McDowell's work. Moreover, any "property damage" had to occur during the policy period in the performance of McDowell's operations for Lendlease. Since there is no evidence of covered "property damage" occurring before substantial completion in March 2008, including when the property owner first discovered the damage in 2011, there is no additional insured coverage available.

Secondly, as to the CPIL Endorsement, the Policy requires that damage first manifests during the policy period, between December 26, 2007 through August 1, 2008. (DE 107-1, p. 51.) There is no evidence that any "property damage" was discovered during the Policy period. The property owner alleges that it became aware of construction defects following its

purchase of the Project on January 7, 2011.  (DE 107-2, ¶¶ 11, 13.)  "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249 (1986).  When the party moving for summary judgment does not bear the ultimate burden of persuasion at trial, it may discharge its burden by demonstrating to the court that there is an absence of evidence to support the non-moving party's case.  See Celotex Corp, 477 U.S. at 325 (1986).  The non-movant must then "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.  Lendlease has not offered in any evidence to refute USF's contention.  Rather, Lendlease offers speculation and ongoing discovery to refute USF's position, which is insufficient to defeat summary judgment.[3]  Thus, the Court finds that the CPIL Endorsement provision bars coverage.

## CONCLUSION

For the reasons set forth above, it is ORDERED, ADJUDGED and DECREED that the Defendant USF's Motion for Summary Judgment (DE 106) is granted, and USF is dismissed from this action.

**IT IS SO ORDERED.**

Joseph Dawson, III
United States District Judge

June 27, 2022
Greenville, South Carolina

---

[3] Lendlease's arguments regarding genuine issues of material fact as to when the property damage occurred and when it was discovered is unavailing.  Given the express terms of the Policy, regardless of when the property damage occurred and subsequently discovered are clearly beyond the date of any coverage under the Policy based on the undisputed facts in the record.  In addition, any further arguments regarding ongoing discovery and ripeness are equally unavailing.  According to the Scheduling Order (DE 101) the discovery and dispositive motions deadlines were November 27, and December 28, 2020, respectively; and, therefore, this argument lacks merit.